UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ANDERSON,

        Petitioner,

v.                                           CASE NO. 5:07-11011
                                            HONORABLE JOHN CORBETT O'MEARA

L.C. EICHENLAUB,

        Respondent.
_____/

## **OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Jason Anderson is an inmate currently confined at the Federal Correctional Institution in Milan, Michigan. He has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2241. The habeas petition challenges a prison disciplinary matter. The Government has urged the Court to deny the habeas petition, and the Court agrees that Petitioner's claims do not warrant relief. Therefore, the habeas petition must be denied.

### **I. Background**

The pleadings allege that Petitioner provided a urine sample following a visit at a federal correctional facility in Leavenworth, Kansas on July 10, 2005. The National Toxicology Laboratory subsequently determined that Petitioner's urine specimen tested positive for Cannabinoids/THC Metabolite. A pharmacist at the federal prison in Leavenworth reviewed Petitioner's medical records and concluded that Petitioner was not issued any medication that would cause his urine to test positive for cannabinoids/THC Metabolite.

On July 19, 2005, Petitioner was charged in an incident report with using narcotics, and

on July 21, 2005, a disciplinary hearing was held. Petitioner denied the charge, but waived his right to present witnesses and his right to the assistance of a staff representative. The hearing officer found Petitioner guilty of the charged offense. Petitioner was punished with 41 days loss of good conduct time, 60 days in disciplinary segregation, 365 days loss of visitation, telephone, and commissary privileges, and a transfer to an institution with a higher security level.

Petitioner pursued administrative remedies without success. Both the Regional Director for the Federal Bureau of Prisons and the Administrator for National Inmate Appeals upheld the hearing officer's findings. The Administrator concluded that Petitioner's right to due process was upheld, that the required disciplinary procedures were substantially followed, and that the greater weight of the evidence supported the hearing officer's decision.

Petitioner filed his habeas corpus petition on March 8, 2007. His arguments read:

I.  Petitioner's right to due process was violated when the Bureau of Prisons staff did not follow proper procedures when collecting Petitioner's urine sample; and

II. Petitioner had not used any narcotics on property of the Bureau of Prisons, therefore, the marijuana detection was from use prior to arrival at Leavenworth.

## II. Discussion

### A. Legal Standards

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Due process in prison disciplinary matters requires that the inmate be given (1) written notice of the charges no less than 24 hours before a disciplinary hearing, (2) the

2

right to call witnesses and present documentary evidence in his defense, provided that such procedures will not be unduly hazardous to institutional safety or correctional goals, (3) the assistance of staff or a fellow inmate if the inmate is illiterate or the case involves a complex issue, and (4) a written statement of the evidence relied on and the reasons for the disciplinary action. *Id*. at 564-70; *Franklin v. Aycock*, 795 F.2d 1253, 1262-63 (6th Cir. 1986).

Due process is a flexible concept that depends on a balancing of the interests affected by the relevant government action. *Superintendent, Mass. Corr'l Institution at Walpole v. Hill*, 472 U.S. 445, 454 (1985).

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . .' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board . . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

*Id*. at 455-56 (internal citations omitted).

### B. Application

Petitioner was provided written notice of the charge on July 19, 2005, at 1:35 p.m. His hearing was held more than 24 hours later on July 21, 2005, at 9:30 a.m. He waived his right to call witnesses and to have a staff representative present. After the hearing, he was given a copy of the hearing officer's report, which documented the evidence relied upon and the reasons for

3

the disciplinary action. Thus, the requirements of due process were satisfied. Petitioner nevertheless raises two challenges to the hearing officer's decision.

## 1. The Procedures

Petitioner's first argument is that the officer who conducted the urine test had no previous experience in performing such tests and did not follow proper procedures. More specifically, Petitioner maintains that the officer did not ask him to certify that he provided the specimen to the officer, that the specimen was sealed in the officer's presence, and that the information on the form and label was correct. Although there is a signature on the chain-of-custody form, Petitioner maintains that the signature belongs to another inmate and that he was not provided with a copy of the form.

The hearing officer determined that the officer's signature on the chain-of-custody form was more credible than Petitioner's allegation of innocence, and the Administrator for National Inmate Appeals found the hearing officer's decision to be reasonable. The Administrator stated that there was substantial compliance with the procedures for narcotics identification in that Petitioner was "positively identified by the testing officer and [his] sample was maintained under constant staff supervision until sealed in [Petitioner's] presence." In addition, "[t]here [wa]s no evidence [that Petitioner's] urine was mixed with that of any other inmate," and "[he] admitted to the [hearing officer] that [he] had smoked marijuana prior to [his] return to secure custody from a Community Corrections Center." Resp. to Pet. for Writ of Habeas Corpus, Ex. 8, page 3.

Petitioner contends that his urine sample was not maintained under constant staff supervision and was not sealed in his presence. This contention is questionable, because

4

Petitioner did not call any witnesses at the disciplinary hearing to substantiate his version of the facts. He also did not attach to his habeas petition any statements from inmates suggesting that the urine samples got mixed up even though he alleges that other inmates provided urine samples at the same time as he did. In any event, the Court is not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence. *Hill*, 472 U.S. at 455. The Court concludes that Petitioner is not entitled to relief on the basis that the correctional officer did not follow proper procedures.

### 2. Previous Use of Marijuana

Petitioner's second and final argument is that there is a high probability his urine tested positive because he used marijuana daily before arriving at the Leavenworth facility. He states that he did not consume any drugs while in the custody of the Bureau of Prisons and that marijuana can remain in a person's system for more than thirty days.

The Bureau estimates that a person's urine can test positive for THC up to 30 days after the last use. Petitioner's own supporting exhibit states that estimating the detection time of a drug in urine is a complex task, that the duration of the urinary cannabinoid detection window is not settled science, and that more research is needed in the area of cannabinoid elimination. *See* Mot. for Writ of Habeas Corpus, Ex. C. Furthermore, Petitioner arrived at the Leavenworth facility on May 25, 2005, and he was tested for narcotics on July 10, 2005. It is unlikely that the positive urine test was the result of using marijuana some forty-six days before Petitioner arrived at Leavenworth.

### III. Conclusion

The procedural requirements for due process were satisfied, and there is "some evidence" to support the hearing officer's conclusion that Petitioner used marijuana while confined at the Leavenworth facility. Consequently, Petitioner is not in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). His application for the writ of habeas corpus is DENIED.

s/John Corbett O'Meara
United States District Judge

Dated: August 7, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 7, 2007, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager